IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NADINE CLYMER,** | : | |
| *Plaintiff*, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 17-5530 |
| | : | |
| **JETRO CASH AND CARRY** | : | |
| **ENTERPRISES, INC.,** *et al.*, | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                      AUGUST 14, 2018

## MEMORANDUM OPINION

**INTRODUCTION**

Before this Court is a motion to compel arbitration filed by Defendants Jetro Cash and Carry Enterprises, Inc., and Restaurant Depot, LLC (collectively "Defendants"), pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-14, in which they seek to stay the underlying action and to compel arbitration. [ECF 7]. Plaintiff Nadine Clymer ("Plaintiff") has opposed the motion. [ECF 8]. The issues raised in the motion have been fully briefed and are ripe for disposition.[1] While this Court finds two of the provisions of the Arbitration Agreement unconscionable as applied, for the reasons set forth below, this Court will sever those unconscionable provisions and grant Defendants' motion to compel arbitration.

**BACKGROUND**

On December 11, 2017, Plaintiff filed an employment discrimination action against Defendants, her former employer, in which she asserts various claims, including, Defendants' alleged violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k) *et seq.*, the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"),

---

[1]      In adjudicating the underlying motion, this Court has also considered Defendants' reply, [ECF 11], Defendants' supplemental memorandum, [ECF 21], and Plaintiff's supplemental brief, [ECF 22].

43 Pa. Cons. Stat. § 951 *et seq.* [ECF 1]. The complaint was amended on May 3, 2018, reasserting the same claims. [ECF 18]. Defendants move to compel arbitration of Plaintiff's claims pursuant to an arbitration agreement. [ECF 7].

The following is a summary of undisputed facts pertinent to the motion:[2]

> Plaintiff worked as a supervisor for Defendants. Upon accepting employment on August 18, 2008, and then again on May 6, 2009, Plaintiff signed an arbitration agreement (the "Arbitration Agreement") which required all claims related to her employment to be submitted to arbitration. Plaintiff's employment was terminated on January 10, 2017.
>
> In response to the motion to compel arbitration, Plaintiff argues that two provisions of the Arbitration Agreement are unenforceable/unconscionable; *to wit*: the provision regarding the payment of arbitration costs and the provision delineating a one-year limitation for submitting claims to arbitration.
>
> The arbitration costs provision provides as follows:
>
> The Company will pay one hundred percent (100%) of all costs peculiar to arbitration, including without limitation AAA administrative fees, arbitrator compensation and expenses, and costs of witnesses called by the Arbitrator ("arbitration costs"). Upon the conclusion of the arbitration hearing and based upon the evidence presented during the hearing, the Arbitrator shall determine and include in the final award an order that the employee reimburse the Company for up to 50% of the arbitration costs. In no event shall the employee be required to reimburse the Company prohibitive costs that would effectively deny him or her a forum to vindicate his or her rights except to the extent set forth above and unless otherwise ordered by the Arbitrator under applicable law, each party shall bear his, her or its own expenses, such as attorneys' fees, costs, and expert witness fees.

---

[2] For purposes of this motion, this Court will construe the facts and evidence in the light most favorable to the non-movant, here, Plaintiff.

> With respect to this provision, Plaintiff challenges only the portion which gives the arbitrator the discretion to order the employee to reimburse the company "up to 50% of the arbitration costs."

> The one-year temporal limitation provision provides that:

>> No dispute shall be eligible for submission to arbitration under this policy where one year shall have elapsed from the occurrence of the event giving rise to the dispute. Filing a claim within this period is a condition precedent to arbitration – the exclusive method for resolving disputes arising out of or relating to Employee's employment with the Company. The one-year period set forth herein is not in the nature of a statute of limitations, but a temporal limitation on the substantive scope of this agreement. The parties, however, may submit his, her or its written arbitration request to the AAA.

>> \*\*\*

>> To start the arbitration process, the complaining party must submit a written arbitration request to the AAA within **one year** of the date a cause of action accrues. A written arbitration request for a claim of wrongful discharge or discriminatory termination must be filed within **one year** of the date of termination.

> The Arbitration Agreement also includes a severability clause which Defendants urge this Court to apply in the event it determines any of the challenged provisions to be unconscionable.

**LEGAL STANDARD**

When addressing a motion to compel arbitration, the Court must first determine which standard of review to apply: that which is applied to motions to dismiss under Federal Rule of Civil Procedure ("Rule") 12 or that applied to motions for summary judgment under Rule 56. "Where the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or documents relied upon in the complaint), the FAA would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery." *Guidotti*

*v. Legal Helpers Debt Resolution, LLC.*, 716 F.3d 764, 773-74 (3d Cir. 2013) (citations omitted). Where arbitrability is not so apparent, "the issue should be judged under the Rule 56 standard." *Id*. Here, the issue of arbitrability is not apparent on the face of the complaint because Plaintiff does not reference the Arbitration Agreement in her complaint or attach it thereto. Thus, this Court finds that the Rule 56 summary judgment standard is applicable.[3]

When applying a Rule 56 standard, the court shall grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A fact is "material" if its existence or non-existence may affect the outcome of litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In applying a Rule 56 standard, "the court must draw all reasonable inferences in favor of the nonmoving party." *Guidotti*, 716 F.3d at 772.

The moving party has the burden of showing the court "the absence of a genuine issue of material fact," by showing that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322-23. The non-moving party must then rebut the claim by "citing to particular parts of materials in the record, including, depositions, documents, electronically stored information, affidavits or

---

[3] In their respective pleadings, both parties appear to agree that the underlying motion should be subject to a Rule 56 summary judgment standard. While ordinarily a party opposing a motion to compel arbitration should have an opportunity to conduct limited discovery to determine arbitrability, Plaintiff does not dispute the existence of, or her signing, the Arbitration Agreement. Rather, Plaintiff relies on the Arbitration Agreement itself to argue the unconscionability of the terms in the two Arbitration Agreement provisions. Because the Arbitration Agreement is part of the record, and Plaintiff uses the Arbitration Agreement in her unconscionability argument, additional discovery is not needed to resolve the unconscionability issue. Accordingly, this Court will apply the Rule 56 standard to determine whether to compel arbitration. *See Glenwright v. Carbondale Nursing Home, Inc.*, 2017 WL 1092541, at *3 (M.D. Pa. Mar. 23, 2017) (applying Rule 56 standard but bypassing discovery because the information needed was already of record for the court).

declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A-B). The non-moving party must show more than "some metaphysical doubt as to the material facts," rather, the non-moving party must "go beyond the pleadings" and "show that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 476 U.S. 574, 586 (1986); *see also Celotex*, 477 U.S. at 324.

**DISCUSSION**

As noted, Defendants move to compel arbitration and stay these proceedings based on an Arbitration Agreement signed by the parties. Plaintiff concedes the Arbitration Agreement exists and that she signed it. However, she argues that it is unenforceable because two of its provisions are unconscionable; *to wit*, the arbitration costs provision and the one-year limitation for requesting arbitration. Plaintiff also argues that Defendants waived their right to arbitration by failing to notify Plaintiff of the Arbitration Agreement or her obligations under it, and that the one-year limitation provision is unenforceable due to the lack of mutuality. Defendants disagree with Plaintiff's arguments, and offer that even if the challenged provisions are unconscionable, the Arbitration Agreement is still enforceable. Based on the analysis below, this Court finds the two provisions are unconscionable as applied to Plaintiff's claims, but that said provisions are severable such that the matter must go to arbitration.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.,* "establishes a strong federal policy in favor of compelling arbitration over litigation." *Sandvik AB v. Advent Int'l Corp.,* 220 F.3d 99, 104 (3d Cir. 2000). Section 2, the primary substantive provision of the FAA, provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983) (citing 9 U.S.C. § 2). This provision

"reflects the fundamental principle that arbitration is a matter of contract." *Rent–A–Center, West, Inc. v. Jackson,* 561 U.S. 63, 67 (2010). Further, § 2 "places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." *Id.* (internal citations omitted). "Like other contracts, however, they may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Id.* at 68 (quoting *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687 (1996)).

Under the FAA:

> [a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. "The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* In so doing, the court "must resolve 'any doubts concerning the scope of arbitrable issues in favor of arbitration.'" *CardioNet, Inc. v. Cigna Health Corp.,* 751 F.3d 165, 172 (3d Cir. 2014) (quoting *Moses H Cone Mem'l Hosp.*, 460 U.S. at 24–25) (internal alterations omitted). If the court determines that the case must be arbitrated, it "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

Before compelling arbitration, therefore, a court must determine (1) whether a valid agreement to arbitrate exists, and (2) whether the particular dispute falls within the scope of that

agreement. *Trippe Mfg. Co. v. Niles Audio Corp.,* 401 F.3d 529, 532 (3d Cir. 2005). Throughout the inquiry, there is a presumption in favor of arbitrability. *Id.* In determining whether a valid arbitration agreement exists, courts look to ordinary state law principles of contract formation. *Kirleis v. Dickie, McCamey & Chilcote, P.C.,* 560 F.3d 156, 160 (3d Cir. 2009); *Alexander v. Anthony Int'l, L.P.,* 341 F.3d 256, 264 (3d Cir. 2003). Thus, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Casarotto,* 517 U.S. at 687; *Harris v. Green Tree Fin. Corp.,* 183 F.3d 173, 179 (3d Cir. 1999).

Here, Plaintiff does not argue that her employment discrimination claims fall outside of the scope of the Arbitration Agreement. She also does not dispute the existence or her signing of the Arbitration Agreement, nor does she assert the lack of offer, acceptance, or consideration required for a valid contract under Pennsylvania law. Rather, Plaintiff disputes the validity of the agreement based upon the defense of unconscionability. "Unconscionability is a defensive contractual remedy which serves to relieve a party from an unfair contract or from an unfair portion of a contract." *Harris,* 183 F.3d at 181. "In addressing a claim that an arbitration clause is unconscionable, we apply the ordinary state law principles . . . of the involved state or territory." *Nino v. Jewelry Exchange, Inc.*, 609 F.3d 191, 200 (3d Cir. 2010).

For a contract to be unconscionable under Pennsylvania law, it must be *both* procedurally and substantively unconscionable. *Gay v. CreditInform,* 511 F.3d 369, 392 (3d Cir. 2008). "Under Pennsylvania law, the test for unconscionability is whether one of the parties lacked a meaningful choice about whether to accept the provision [or contract] in question and the challenged provision or contract unreasonably favor[s] the other party to the contract." *Zumpano v. Omnipoint Commc'ns, Inc.,* 2001 WL 43781, at *5 (E.D. Pa. Jan. 18, 2001) (addition in

7

original). It is the plaintiff's burden of proof to show unconscionability. *Williams v. Borough of W. Chester,* 891 F.2d 458, 460 (3d Cir. 1989). In analyzing these two prongs, the Pennsylvania Supreme Court has indicated that it might be appropriate to use a "sliding-scale approach" so that "where the procedural unconscionability is very high, a lesser degree of substantive unconscionability may be required" and vice-versa. *Quilloin v. Tenet Health System Philadelphia, Inc.*, 673 F.3d 221, 230 (3d Cir. 2012) (citing *Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 125 n.12 (Pa. 2007)).

    1.    **Procedural Unconscionability**

Procedural unconscionability describes the process by which the parties entered into the contract. The Pennsylvania Supreme Court has defined it as the "absence of meaningful choice on the part of one of the parties." *Witmer v. Exxon Corp.,* 434 A.2d 1222, 1228 (Pa. 1981). Procedural unconscionability is generally found in contracts of adhesion. *Alexander,* 341 F.3d at 265. A contract of adhesion is one prepared by a party with excessive bargaining power and presented to the other party on a "take it or leave it" basis. *Parilla v. IAP Worldwide Servs., VI, Inc.,* 368 F.3d 269, 276 (3d Cir. 2004). The touchstone is whether the party challenging the agreement had any meaningful choice regarding acceptance of its provisions. *Thibodeau v. Comcast Corp.,* 912 A.2d 874, 886 (Pa. Super. Ct. 2006); *see also Hopkins v. NewDay Fin., LLC,* 2008 WL 2654635, at *2 (E.D. Pa. June 30, 2008).

Here, neither party provides any significant argument with respect to procedural unconscionability. Rather, both parties spend the bulk of their briefs addressing substantive unconscionability. Applying the "sliding scale approach" referenced above, and in light of the substantive deficiencies discussed below, Plaintiff's personal circumstances, and the apparent unequal bargaining power between Plaintiff and Defendants, this Court finds that the Arbitration

Agreement is a procedurally unconscionable adhesion contract. Having found that the Arbitration Agreement is a contract of adhesion and procedurally unconscionable, this Court must next determine whether the challenged provisions are substantively unconscionable.

### 2. Substantive Unconscionability

"Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Harris,* 183 F.3d at 181. "To establish substantive unconscionability, the plaintiff must show that the contractual terms are unreasonably favorable to the drafter, and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions." *Bullick v. Sterling Inc.,* 2004 WL 2381544, at *10 (E.D. Pa. Oct. 21, 2004); *Dabney v. Option One Mortgage Corp.,* 2001 WL 410543, at *5 (E.D. Pa. Apr. 19, 2001).

#### a. Arbitration Costs Provision

Plaintiff argues that the Arbitration Agreement is substantively unconscionable because it gives the arbitrator the discretion to require her to pay "up to 50% of the Arbitration Costs." (Arbitration Agreement). "An arbitration provision that makes the arbitral forum prohibitively expensive for a weaker party is unconscionable." *Parilla,* 368 F.3d at 284. A party seeking to "invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive . . . bears the burden of showing the likelihood of incurring such costs." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92 (2000). To meet this burden, a plaintiff must (1) come forward with some evidence to show the projected fees that would apply to their specific arbitrations, and (2) show the party's inability to pay those costs. *Parilla,* 368 F.3d at 283–85; *Alexander,* 341 F.3d at 268–69. Thus, a party seeking to declare a provision awarding arbitration costs unenforceable must proffer some credible and substantiated evidence of that party's

9

financial situation as well as the specific costs of arbitration. *See Blair v. Scott Specialty Gases,* 283 F.3d 595, 607 (3d Cir. 2002); *Parilla,* 368 F.3d at 284.

In support of her challenge, Plaintiff has presented evidence (not challenged by Defendants) which shows that her finances would make the arbitration costs "prohibitively expensive." [ECF 8, Pl. Resp. to Mot. to Compel. Arb. at pp. 17-24]. Plaintiff submitted evidence regarding the costs of the proposed arbitration, a cost Defendants have not disputed. She also submitted evidence of her financial status at the time she signed the agreement, showing that she earned $13.70/hour for thirty-five to forty-two hours a week. [*Id.*]. Based on Plaintiff's unrefuted evidence with respect to her financial situation, this Court finds that the possibility of having to pay 50% of the costs associated with any arbitration of her underlying claims would discourage Plaintiff from filing a meritorious claim. Therefore, Plaintiff has met her burden to show that the arbitration would be "prohibitively expensive," and that the costs provision is unconscionable.[4]

In response to Plaintiff's challenge to the enforceability of the costs provision, Defendants make two arguments. First, they argue that while the provision provides for fee-splitting, it also "expressly forbids unconscionable cost-shifting." [ECF 11 at p. 3]. Specifically, to support this argument, Defendants point to the inclusion of the following language in the Arbitration Agreement: "In no event shall the employee be required to reimburse the Company prohibitive costs that would effectively deny . . . her a forum to vindicate . . . her rights."

---

[4] This Court also notes that on several occasions, the Court of Appeals for the Third Circuit has found similar costs provisions in arbitration agreements to be unconscionable where the plaintiff provided sufficient evidence to show that the costs of arbitration would be "prohibitively expensive." For example, in *Spinetti v. Service Corp. Int'l*, 324 F.3d 212 (3d Cir. 2003), the Third Circuit found that an arbitration agreement that required the plaintiff to split the arbitration costs was unconscionable. *Id.* at 216-17. Similarly, in *Alexander,* the Third Circuit found a "loser pays" provision in an arbitration agreement unconscionable. 341 F.3d at 270; *see also Blair v. Scott Specialty Gases*, 283 F.3d 595, 610 (3d Cir. 2002) (remanding case for determination as to whether the arbitration costs would be prohibitively expensive where arbitration agreement required plaintiff to split the costs of arbitration).

10

(Arbitration Agreement). Defendants essentially concede that the costs provision as written gives the arbitrator the discretion to order Plaintiff to pay up to 50% of the costs, but argue that the provision is not unconscionable because it gives the arbitrator discretion to fashion an award that is not prohibitively expensive for Plaintiff. This Court is not persuaded by this argument. Indeed, in *Parilla*, the Third Circuit rejected a similar argument and held that such arbitrator discretion had no bearing on the unconscionability assessment. 368 F.3d at 284-85 (finding "little difference between a 100% probability that the employee will have to pay half of the arbitrator's fees and expenses on the one hand, and an indeterminate (but less than 100%) probability that the employee would have to pay all of the arbitrator's fees and expenses on the other.").

Second, Defendants suggest that the costs provision is not unconscionable because they have waived enforcement of it. [*See* ECF 11 at pp. 3-4]. While this waiver might be binding on Defendants, the Third Circuit has expressly held that such a litigation waiver does not alter or affect a court's unconscionability analysis. *See Parilla*, 368 F.3d at 285 (holding that a court "must determine unconscionability as of the time the contract was formed, and an after-the-fact offer to waive certain contract provisions can have no effect on [that] analysis."). Accordingly, this Court finds the portion of the arbitration costs provision which allows the arbitrator to require Plaintiff to pay "up to 50% of the Arbitration Costs" unconscionable.

### b. One-Year Temporal Limitation Period Provision

Plaintiff contends the one-year temporal limitation provision is unconscionable and, therefore, unenforceable as to her FMLA, Title VII and PHRA claims. This Court comes to different conclusions as to these claims, finding the provision unenforceable as to the FMLA claim, and enforceable as to the Title VII and PHRA claims. As such, this Court will separate

these arguments and analyses into two separate sections, as did the parties in their respective briefs.

### i. FMLA Claim

Plaintiff argues that the Arbitration Agreement is substantively unconscionable as applied to her FMLA claims because it unreasonably and impermissibly requires such claims to be submitted to an arbitrator within one year of the event/action giving rise to the claim in violation of her rights under the FMLA. Defendants contend that the limitation is reasonable based on case law and, alternatively, if unreasonable, is severable from the Arbitration Agreement via the severability clause. This Court finds, however, that the one-year temporal limitation period as applied to Plaintiff's FMLA claim is unenforceable because applicable regulations, 29 C.F.R. §§ 825.220(a)(1) and (d), preclude any shortening of the statutory period in which a plaintiff can assert an FMLA claim.

Though the Third Circuit has not addressed this particular issue, a majority of other courts that have addressed the issue have held that limitations clauses, which shorten the time in which an FMLA claim must be asserted, are unenforceable. In *Lewis v. Harper Hosp.*, the court held that a six month limitations clause was "an interference with employees' rights under the FMLA," and, therefore, was unenforceable. 241 F. Supp. 2d 769, 772 (E.D. Mich. 2002). The *Lewis* court relied on FMLA regulations which provide that "employers are prohibited from interfering with, restraining, or denying the exercise of (or attempts to exercise) any rights provided by the act." *Id*. (quoting 29 C.F.R. § 825.220(a)(1)). Relying on the regulation, the *Lewis* court held that "[e]mployees cannot waive, nor may employers induce employees to waive, their rights under FMLA," including with respect to the statutory limitations period. *Id*. (quoting 29 C.F.R. § 825.220(d)). Numerous courts have followed, restating that the regulations

prohibit employers from shortening the FMLA statute of limitations. *See Grosso v. Fed. Exp. Corp.*, 467 F. Supp. 2d 449, 457 (E.D. Pa. 2006) (relying on *Lewis* and holding that an employer could not shorten the time in which an employee could bring a FMLA claim); *McKinley v. Rapid Glob. Bus. Sols., Inc.*, 2017 WL 3173058, at *7 (S.D. Ind. 2017) (holding that "although parties may contractually limit the time to bring an action, numerous district courts have found such limitations clauses are not enforceable in the context of the FMLA.") (citation omitted); *Bullard v. Fedex Freight, Inc.*, 218 F. Supp. 3d 608, 615 (M.D. Tenn. 2016) (holding "the relevant right is the <u>plaintiff</u>'s right to sue, not the <u>defendant</u>'s right to be sued within a reasonable period . . . [a]n employer cannot limit the plaintiff's right to sue more than the statute does.") (emphasis in original).

This Court is persuaded by the reasoning of these cases, and finds that the applicable regulations preclude employers from limiting the FMLA rights of employees, including shortening the applicable statute of limitations. Accordingly, the one-year temporal limitation in the Arbitration Agreement is unenforceable as to Plaintiff's FMLA claim.

### ii. Title VII/PHRA Claims[5]

Plaintiff next argues that the one-year temporal limitation provision as applied to her Title VII and PHRA claims is unconscionable. Plaintiff essentially argues that the one-year temporal limitation interferes with her ability to pursue and exhaust administrative remedies with the EEOC and/or PHRC and effectively prevents Plaintiff from administratively exhausting her claims. As argued by Defendants, however, Plaintiff's arguments are misplaced in that Plaintiff

---

[5] Neither party has directed this Court to any regulations similar to that discussed immediately above that would similarly prohibit an employer from effectively shortening the time in which an employee could bring either a Title VII or PHRA claim. This Court is unaware of any such regulation. As such, the above analysis with respect to Plaintiff's FMLA claim does not apply to her Title VII and/or PHRA claims.

incorrectly conflates the administrative exhaustion processes underlying Title VII and the PHRA with the arbitration required by the Arbitration Agreement.

Plaintiff implies that she is required to administratively exhaust her Title VII and PHRA claims before submitting these claims to arbitration. Plaintiff is mistaken. In *Gilmer v. Interstate/Johnson Lane Corp.*, the United States Supreme Court held that participation in administrative proceedings and participation in arbitration are not mutually exclusive or co-dependent remedies. 500 U.S. 20 (1991). "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum." *Id*. at 26 (citations omitted). An aggrieved person who cannot institute a private judicial action because of an arbitration agreement retains the right to pursue administrative remedies by filing a charge with the EEOC. *Id.* at 28. Thus, an employee who is party to an arbitration agreement, while free to pursue administrative remedies, is not required to do so and, more importantly, her decision to pursue administrative remedies does not affect in any way her obligations under an arbitration agreement.

Here, in the Arbitration Agreement, the parties agreed that any Title VII/PHRA claims must be brought in arbitration rather than in a court of law. It is well-settled that such agreements are fully enforceable. *See e.g*., *Spinetti*, 324 F.3d at 218 (noting that "[f]ollowing *Gilmer*, federal courts continually enforced arbitrations of employment-discrimination claims under Title VII . . . ."). The Arbitration Agreement does not alter in any manner Plaintiff's rights to seek administrative remedies by way of the EEOC or the PHRC. Plaintiff was and is free to do so without any bearing on her ability to bring such claims in arbitration. Again, the two processes are completely unrelated.

Plaintiff's arguments were similarly rejected in *Cerna v. Prestress Services Industries LLC*, 2011 WL 1884547 (N.D. Ind. May 18, 2011). There, an employee asserted a Title VII claim against his employer following administrative exhaustion of his claim through the EEOC. *Id*. at *3. The employer responded by arguing that the claim was required to be submitted to arbitration, but that any arbitration demand was untimely pursuant to the arbitration agreement's one-year temporal limitation. *Id*. The plaintiff argued that the one-year temporal limitation should not be enforced because he had followed the statutory requirements for exhausting his claim with the EEOC. *Id*. at *7. Rejecting plaintiff's invitation to invalidate the one-year temporal limitation, the court held:

> Furthermore, as Cerna fails to recognize, the mandatory arbitration and the EEOC charge are not mutually exclusive. That is, Cerna was not required to wait for the EEOC to finish its investigation before requesting arbitration. Indeed, Cerna could have simultaneously filed his EEOC charge and requested arbitration. The fact that Cerna neglected to seek arbitration, apparently through his own negligence, does not render the one-year limitation unenforceable.

*Id*.; *see also Volpe v. Jetro Holdings*, 2008 WL 4916027 at *8 (E.D. Pa. Nov. 14, 2008) (holding that "[a]lthough plaintiffs could not have initiated a judicial action prior to the completion of the administrative proceedings, they were not precluded from exercising their rights under the Arbitration Agreement.").[6]

---

[6] Plaintiff also argues that Defendants waived their right to arbitration by failing to notify Plaintiff of the Arbitration Agreement and one-year temporal limitation provision, particularly during the EEOC proceedings. Defendants assert that this waiver argument should be rejected as they had no obligation to notify Plaintiff of the Arbitration Agreement or that her opportunity to request arbitration was soon expiring.

Although undetermined by the Third Circuit, numerous district courts have held a party does not waive their right to arbitration by taking part in EEOC proceedings or failing to proactively raise the defense of arbitration. *See e.g., Volpe*, 2008 WL 4916027, at *16 (holding "a party's participation in EEOC or local agency proceedings is not inconsistent with the right to arbitrate."). This Court agrees with *Volpe*. Here, Plaintiff began the administrative proceedings under the EEOC shortly after the incident occurred, however, a claim was not filed in this Court until December 11, 2017. Defendants

Like the plaintiffs in *Cerna* and *Volpe*, Plaintiff here misconstrues the scope of the Arbitration Agreement and its effect on the administrative remedies available to her under Title VII and/or the PHRA. While the Arbitration Agreement requires any Title VII/PHRA claims to be submitted to arbitration within one year of the action giving rise to the claim, it does not expressly or implicitly alter any of Plaintiff's rights or obligations with respect to her pursuit of administrative remedies with either the EEOC or the PHRC. Plaintiff's arguments to the contrary are unfounded. As such, the one-year temporal limitation period as applied to Plaintiff's Title VII and/or PHRA claims is enforceable.[7]

---

promptly and timely filed their underlying motion to compel arbitration in response. As in *Volpe*, Defendants' participation in the administrative proceedings did not constitute a waiver. Accordingly, Defendants have not waived their right to arbitration.

[7] To support her argument with respect to the unreasonableness of the one-year temporal limitation, Plaintiff relies primarily on a number of courts which held various temporal limitations on a plaintiff's Title VII claims unenforceable. The majority of these cases, however, did not involve such temporal limitations in an arbitration agreement (like the case here) as opposed to temporal limitations to bring suit in the parties' general employment agreements. Those cases turned on the effect those temporal limitations had on the plaintiff's ability to administratively exhaust their Title VII/PHRA claims and eventually bring them following exhaustion in a federal court. Moreover, any argument that the one-year temporal limitation unreasonably shortens the time period in which Plaintiff could bring her underlying Title VII and/or PHRA claims is without merit since such claims were required to be filed with the EEOC/PHRA within 300/180 days, respectively, of the event giving rise to the claim, whereas the Arbitration Agreement provides Plaintiff one year to submit her claims to arbitration.

Plaintiff also argues that the one-year temporal limitation period "unilateral[ly] and unreasonably favors the employer," because she is required to file her claims within one year while Defendants are not required to do the same. [ECF 8 at p. 16]. Plaintiff is wrong. The language of the Arbitration Agreement does not specifically limit just Plaintiff to a one year period, but states that "[n]o dispute shall be eligible for submission to arbitration under this policy where one year shall have elapsed . . . [t]he parties, however, may submit his, her or its written arbitration request to the AAA." [Arbitration Agreement]. This language expressly applies to both parties. Moreover, even if the language was limited to Plaintiff, this would be enforceable. In *Harris*, the Third Circuit enforced a one-sided provision because "a contract need not have mutuality of obligation as long as the contract is supported by consideration." *Harris*, 183 F.3d at 180. Because Plaintiff was given consideration in the form of employment for signing this Arbitration Agreement, there is no requirement that Defendants be bound by the same terms.

16

### 3. Severability Provision

Having determined that the two challenged provisions in the Arbitration Agreement are unconscionable as applied to Plaintiff, this Court must next determine whether those provisions can be severed from the remainder of the agreement so as to allow the dispute to be subject to arbitration. *See Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 186 (3d Cir. 2010); *Spinetti*, 324 F.3d at 219. For this determination, this Court again turns to Pennsylvania contract law. *Spinetti*, 324 F.3d at 219. Under Pennsylvania law, unconscionable terms in an arbitration agreement can be severed where such terms are not "essential" to the overall agreement. *Id.*

In *Spinetti*, the Third Circuit affirmed the district court's conclusion that both a costs provision and an attorney's fee provision in an arbitration agreement were unconscionable. *Id.* at 216-217. The Court further found that these two provisions could be severed from the remainder of the agreement to allow the primary purpose of the agreement to be enforced, *i.e.*, resolution of the parties' employment dispute by arbitration. *Id.* at 219-20; *see also id.* at 214 (stating "[y]ou don't cut down the trunk of a tree because some of its branches are sickly.").

Here, as in *Spinetti*, "the essence of the [Arbitration Agreement] . . . is an agreement to settle . . . employment disputes through binding arbitration." *Id.* at 214 (quotations omitted). The applicable AAA procedures and the bulk of the Arbitration Agreement itself are reasonably calculated to that purpose. The costs provision and the one-year temporal limitation as applied to Plaintiff's FMLA claim can be severed without disturbing the central goals of the agreement or the parties' mutual obligation to arbitrate. Severing the invalid provisions will merely allow Plaintiff time to formulate and assert her claims without being thwarted or discouraged by the possibility of prohibitively expensive costs. Accordingly, the costs provision and the one-year

temporal provision as applied to Plaintiff's FMLA claim are severed, and the remainder of the Arbitration Agreement shall be enforced.

**CONCLUSION**

For the reasons stated herein, Defendants' motion to compel arbitration is granted. However, the provision regarding splitting of the arbitration costs and the provision providing a one-year temporal limitation as applied to Plaintiff's FMLA claim are unenforceable and, therefore, struck from the Arbitration Agreement. An Order consistent with this Memorandum Opinion will follow.

NITZA I. QUIÑONES ALEJANDRO, J.